JUDGE OETKEN    13 CV 2664

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK SCOTT JANEIRO
SSN ▮▮▮▮

Plaintiff,

v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

Defendant,

---

**COMPLAINT**

Civil Action No.



RECEIVED
APR 2 3 2013
U.S.D.C. S.D. N.Y.
CASHIERS

---

Plaintiff, Mark Scott Janeiro, Social Security Number ▮▮▮▮, respectfully states:

1. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) to review a decision of the Commissioner of Social Security denying Plaintiff's application for Social Security Disability benefits and Supplemental Security Income benefits for a lack of disability.

2. This action is an appeal from a final administrative decision denying Plaintiff's claim. (Exhibit "A")

3. This action is commenced within the appropriate time period set forth in the attached Appeals Council Notice dated February 21, 2013. (Exhibit "B")

4. Plaintiff resides at 28 Route 17K, Newburgh, New York 12550.

5. The Defendant, Carolyn W. Colvin, is the Acting Commissioner of Social Security of the United States of America.

6. Plaintiff is disabled.

7. The conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation.

WHEREFORE, Plaintiff prays that this Court:

1. Finds that the Plaintiff is entitled to disability insurance benefits under the provisions of the Social Security Act; or

2. Remand this case for a further hearing;

3. Award attorney's fees under the Equal Access to Justice Act, 26 U.S.C. § 2412, on the grounds that the Commissioner's action in this case was not substantially justified; and

4. Order such other and further relief as the Court deems just and proper.

Dated: April 23, 2013

Respectfully submitted,

Brian L. Bromberg, Esq.
Bromberg Law Office, P.C.
40 Exchange Street
New York, New York 10005
212-248-7906
brian@bromberglawoffice.com

# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Refer To: ███████

Office of Disability Adjudication and Review
2709 Rolling Road
Baltimore, MD 21244

Date: October 13, 2011

Mark Scott Janeiro
290 Pressler Road
Wallkill, NY 12589

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council
Office of Disability Adjudication and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76-OP2 (03-2010)

See Next Page


Mark Scott Janeiro (█████████)                              Page 2 of 3

### What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence with your appeal. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

### How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

### The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

### When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

### New Application

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Mark Scott Janeiro (⬛⬛⬛⬛⬛)                                                Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general
questions about social security. You may also call (800) 772-1213 with questions. If you are deaf
or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have
this notice and decision with you. The telephone number of the local office that serves your area
is (855)881-0213. Its address is:

> Social Security
> 186 Exchange Street
> Suite 100
> Buffalo, NY 14204-2026

> Scott M. Staller
> Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)


cc:   Melissa Pezzino
      Law Offices of Kenneth Hiller
      6000 N. Bailey Avenue
      Suite 1A
      Amherst, NY 14226

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |

Period of Disability, Disability Insurance
Benefits, and Supplemental Security Income

Mark Scott Janeiro
(Claimant)

(Wage Earner)                    (Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

On October 2, 2009, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on October 5, 2009. In both applications, the claimant alleged disability beginning November 1, 2007. The claims were denied initially on February 5, 2010. Thereafter, the claimant filed a timely written request for hearing on February 10, 2010 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). On August 17, 2011, the undersigned held a video hearing (20 CFR 404.936(c) and 416.1436(c)). The claimant appeared in Buffalo, NY, and the undersigned presided over the hearing from Albuquerque, NM. Stephen B. Schnacke, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Melissa Pezzino, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

If the claimant is under a disability and there is medical evidence of a substance use disorders, there is an additional issue as to whether the substance use disorders is a contributing factor material to the determination of disability under section 223(d)(2) and 1614(a)(3)(j) of the Social Security Act. If so, the individual is not under a disability.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2014. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

See Next Page



After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant is under a disability, but that a substance use disorders is a contributing factor material to the determination of disability. Accordingly, the claimant has not been disabled under the Social Security Act at any time from the alleged onset date through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

If it is found that the claimant is disabled and there is medical evidence of a substance use disorders, the undersigned must determine if the substance use disorders is a contributing factor material to the determination of disability. In making this determination, the undersigned must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. If the remaining limitations would not be disabling, the substance use disorders is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). If so, the claimant is not disabled.

See Next Page



## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The claimant has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: left shoulder tendonitis, chronic back pain, post-traumatic stress disorder, depressive disorder, alcohol dependence, opiate dependence, and cocaine dependence (20 CFR 404.1520(c) and 416.920(c)).

The record reflects that the above impairments have more than a minimal effect on the claimant's ability to perform basic work functions and are therefore considered severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

The record fails to establish that the claimant's impairments meet or equal the criteria of any listed physical impairment. There is not an indication that a treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments singly or in combination, medically meet or equal the criteria of any listed impairment.

The claimant's mental impairments, including the substance use disorders, do not meet listings 12.04, 12.06, or 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has a mild restriction. With substance use, the record indicates that the claimant is capable of performing many of his activities of daily living. He testified that he is able to dress himself and that he changes his clothes on a regular basis. The claimant reported that he takes regular showers but may go a few days without bathing due to depression. He explained that he has difficulty being in public places and does not shop for groceries. The claimant is in the process of getting his driver's license reinstated. He noted that he could attend more post-traumatic stress disorder (PTSD) meetings when this happens. Based on the record however, it appears that the claimant is able to attend medical appointments on a

See Next Page

regular basis. As discussed in the decision below, the undersigned finds that the claimant has only a mild limitation in performing his activities of daily living with substance use.

In social functioning, the claimant has moderate difficulties. With substance use, the record indicates that the claimant has limited socialization (Exhibit 4F/4). He has reported that he socializes with his brother who lives nearby as well as with his mother. The claimant regularly attends his medical appointments and group therapy sessions where he talks about his experiences with PTSD. He did however testify that he occasionally has problems getting along with neighbors and coworkers, which can lead to verbal arguments. The record also indicates that the claimant could have some difficulties relating adequately with others (Exhibit 4F/4). As discussed in the decision below, the undersigned finds that the claimant has moderate difficulties in his social functioning with substance use.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. With substance use, the record indicates that the claimant has encountered some difficulties dealing appropriately with stress and experiences emotional issues at times (Exhibit 4F/4). The claimant has also demonstrated poor insight and judgment with frequent substance abuse. Such instances have escalated stressful circumstances leading to episodes of decompensation. The claimant testified to having occasional difficulty with his attention and concentration. He likewise reported difficulty retaining information that he has read. During a typical day, the claimant reported that he predominately watches television (Exhibit 4F/4). The claimant also testified during the hearing that he is in the process of having his driver's license reinstated. The undersigned notes that both watching television and driving an automobile both require a certain degree of acuity. Upon observation, the claimant has been observed to have intact attention and concentration as well as intact recent and remote memory skills (Exhibit 4F/3). As discussed in the decision below, the undersigned finds that the claimant has moderate difficulties with regard to concentration, persistence, or pace.

As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation. With substance use, the record indicates that the claimant has had a series of psychiatric admissions. Most recently, in January 2010, the claimant was admitted after evidencing suicidal ideation (Exhibit 11F/2). At that time, he made no mention of his substance abuse history but rather noted his issues with PTSD. While hospitalized, the claimant participated in individual and group therapy (Exhibit 11F/3). He was also given psychiatric medications which improved his mood. The claimant again verbalized suicidal ideation immediately after his irregular discharge in December 2010 (Exhibit 14F/439). The claimant had been left at a gas station by a friend following a cocaine relapse and was subsequently taken to the hospital for evaluation.

Because the claimant's mental impairments, including the substance use disorders, do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

See Next Page

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

5.    After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: The claimant could occasionally climb, balance, stoop, kneel, crouch or crawl. He would not be able to lift overhead with his left upper extremity, but he would have the full use of his right upper extremity, which is his dominant extremity. The claimant would be able to finger objects and control objects level in front of him with his left upper extremity. He should avoid concentrated exposure to dangerous moving machinery and unprotected heights. The claimant would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions. He should have only brief, infrequent, and superficial contact with the public and only occasional interaction with the coworkers and supervisors. He should work in a job requiring only occasional decision making and with only occasional changes in the work setting. In addition, the claimant would be off task twenty percent or more of the workday.

The claimant is alleging disability due to left shoulder tendonitis, chronic back pain, post-traumatic stress disorder, and depressive disorder. He testified that he served in the United States Army between 2004 and 2007, two years of which he spent in combat duty in Iraq. Since his discharge in 2007, the claimant was found to be disabled by the Department of Veterans Affairs. He suffers left shoulder and back pain incurred during his time in the military. The claimant reported constant pain in his shoulder which has limited motion and strength. In terms of his back pain, he reported constant pain due to herniated disc in his neck and lower back. He also noted having a bulge in his lumbar spine. The claimant's back condition reportedly limits him to standing no more than half an hour, sitting half an hour, and bending completely. The claimant reported that he could occasionally lift up to forty pounds at one time.

In addition to his physical impairments, the claimant also testified that he suffers from post-traumatic stress disorder (PTSD) and depression due to his experiences in the military. He explained that he returned from the war a different person with increased psychological symptoms. The claimant reported that he began experiencing panic attacks, nightmares, and disrupted sleep. He stated that he began withdrawing socially and having problems getting along with others. His attention and concentration were also noted to have been affected. Due to his mental impairments, the claimant explained that he began self-medicating by using alcohol and cocaine. He testified that he had not used alcohol for approximately three years and had not used cocaine for two years.

See Next Page

After careful consideration of all the evidence, the undersigned finds that the claimant is credible concerning the limitations cited above with the inclusion of substance use. The record indicates that the claimant was discharged from the Army in October 2007 (Exhibit 1F/8). At that time, the claimant was determined to have service-connected disabilities of intervertebral disc syndrome (10%), post-traumatic stress disorder (30%), and an impairment of his clavicle or scapula (10%). Since his discharge, the claimant has been treated for both back and left shoulder pain (Exhibit 6F/21). MRI images of the claimant's shoulder in 2008 showed mild supraspinatus tendonosis (Exhibit 10F/2). Images of his thoracic spine a revealed moderate disc herniation at the T11-T12 and T7-T8 as well as a disc bulge at the T6-T7 (Exhibit 10F/3).

Dr. Kathleen Kelley, MD, an independent medical examiner, observed the claimant to have a limited range of motion in his spine (Exhibit 5F/4). The claimant however had a normal gait, stance, and squat with no apparent distress (Exhibit 5F/2). Based on her evaluation, Dr. Kelley opined that the claimant would require comfort breaks with any bending or twisting of the lumbar and thoracic spine (Exhibit 5F/4). It was also stated that he would require comfort breaks with any repetitive activity with his left arm, especially overhead. Dr. Kelley reported that she found no other obvious limitations during her examination. The record indicates that the claimant has continued to complain of low back and thoracic spine pain since that time (Exhibit 14F/116). For treatment of his pain, the claimant has been prescribed various prescription medications including Tramadol, Gabapentin, Naproxen (Exhibit 14F/116).

The undersigned has considered the effects of the claimant's physical impairments and has accordingly limited him to light exertional work with the additional postural, manipulative, and environmental restrictions as noted above in the residual functional capacity. Such restrictions have been imposed to afford the claimant the benefit of any reasonable doubt as to his physical limitations.

As for his mental health, the record indicates that the claimant was diagnosed with post-traumatic stress disorder (PTSD) and depressive disorder in November 2007 upon returning from combat duty in Iraq (Exhibit 1F/6). The claimant began experiencing nightmares and flashbacks of war (Exhibit 1F/9). His symptoms of PTSD were reported to affect his ability to maintain meaningful relationships and sustain employment. The claimant experienced difficulty concentrating due to little sleep and he became hypervigilant with an exaggerated startle response. Because of his condition, the claimant began to self-medicate. This led to a number of legal troubles including assault while intoxicated. The claimant reported that he had difficulty finding anything meaningful and would often walk off from his job. He also reported severe anxiety. A treating physician stated in December 2009 that the claimant had shown a greater insight and ability to manage his symptoms of PTSD, yet he continued to demonstrate a full range of PTSD symptoms (Exhibit 1F/10). It was reported that it was unlikely he could be able to maintain any length of employment.

The claimant underwent an independent psychiatric evaluation performed by Dr. Thomas Chou, Ph.D. in January 2010. At that time, the claimant denied symptoms of thoughts of suicide and symptoms of manic, thought disorder, or cognitive deficits (Exhibit 1F/2). He also stated that he had never used street drugs and that his drinking problem was under control. Upon examination, the claimant was cooperative with clear and goal oriented thought processes (Exhibit 4F/3). He

displayed a neutral mood with intact attention and memory. Based on his examination, Dr. Chou opined that the claimant would be able to follow and understand simple directions and instructions as well as perform simple tasks independently (Exhibit 4F/4). He stated that the claimant could maintain attention and concentration, maintain a regular schedule, learn new tasks under supervision, and make appropriate decisions. Dr. Chou noted that the claimant did have some difficulty relating adequately with others and dealing with stress due to both emotional issues and a fear of public places.

The record documents increased mental issues with substance use in 2010 and 2011. The claimant was admitted to the hospital for five days in January 2010 after making suicidal statements (Exhibit 11F/2). He denied depressive or paranoid ideations but noted persistent anxiety. It was reported that he had not been taking his medications as prescribed and had overdosed at times (Exhibit 11F/10). The claimant's status improved with compliance. He also voiced suicidal ideation at times which coincided with substance use (Exhibit 14F/439). The claimant was consistently observed to have an anxious mood with some variance of depression (Exhibit 14F/630). He has participated in various PTSD programs with some improvement, while continuing to display PTSD symptoms and have substance use relapses (Exhibit 14F/160, 439, 444, and 668).

Dr. C. Butensky's performed a psychological assessment in February 2010. Based on their review, Dr. Butensky opined that the claimant retained the capacity to perform simple job tasks and to sustain attention and concentration for such tasks (Exhibit 7F/13). Dr. Butensky reported that the claimant had moderate limitations in his ability to adapt to changes in a routine work setting and to interact appropriately with coworkers and supervisors. He found the claimant to have a mild restriction in activities of daily living and in maintaining concentration, persistence, or pace (Exhibit 7F/11). Moderate difficulties were also noted in social functioning and the claimant was said to have experienced one or two repeated episodes of deterioration of an extended duration.

The effects of the claimant's mental impairments have been considered within the functional limitations determined herein. Based on the record, the undersigned finds that with substance use, the claimant would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions. However, he would be off task twenty percent or more of the workday. In addition, he should have only brief, infrequent, and superficial contact with the public and only occasional interaction with the coworkers and supervisors. He should work in a job requiring only occasional decision making and with only occasional changes in the work setting.

As for the opinion evidence, significant weight is given to the opinions of Dr. Kathleen Kelley, Dr. Thomas Chou, and Dr. C. Butensky found in Exhibits 5F, 4F, and 7F. These opinions are consistent with the record and they are supported by the evidence. The undersigned does however note that an examination of the entire record shows that the claimant's continuing substance use would cause him to be off task twenty percent or more of the workday.

The record also contains a considerable amount of medical evidence from the Department of Veterans Affairs (VA). Because the VA and Social Security Administration's criteria for

determining disability are not identical, an Administrative Law Judge may give less weight to a VA disability rating if there are persuasive, specific, valid reasons for doing so that are supported by the record (20 CFR 404.1504 and 416.904; and SSR 06-03). However, statements made regarding the disability status of the claimant are legal opinion on the ultimate issue of disability reserved for the Commissioner of Social Security (SSR 96-5p). The undersigned has considered such opinions found in Exhibits 1F, 8F, 12F, 14F, and 15F and has accorded them less weight based on the entirety of the record.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The vocational expert testified that the claimant has past relevant work as a cook, described by the *Dictionary of Occupational Titles (DOT)* code number 318.687-010 as medium in terms of exertion and unskilled (SVP 2); and as a HVAC installer, described by *DOT* code number 637.664-010 as heavy in terms of exertion and skilled (SVP 6). In response to a hypothetical assuming an individual of the claimant's age, education and work experience, and possessing the same residual functional capacity, the vocational expert testified that such an individual could not perform the claimant's past relevant work. Accordingly, the claimant was unable to perform past relevant work.

**7.   The claimant was born on June 21, 1980 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the

claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations from all of the impairments, including the substance use disorders. To determine the extent of erosion of the unskilled light occupational base caused by these limitations, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform.

Based on the vocational expert's testimony, the undersigned concludes that, considering all of the claimant's impairments, including the substance use disorders, the claimant is unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy. A finding of "disabled" is therefore appropriate under the framework of the above-cited rule.

**11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.**

The record reflects that that the above impairments would continue to cause more than a minimal effect on the claimant's ability to perform basic work functions if he ceased substance use.

**12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).**

Even if the claimant stopped the substance abuse, the record would fail to establish that the claimant's impairments meet or equal the criteria of any listed physical impairment. There is not an indication that a treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments singly or in combination, medically meet or equal the criteria of any listed impairment.

If the claimant stopped the substance use, the remaining limitations would not meet or medically equal the criteria of listings 12.04 or 12.06. In terms of the "paragraph B" criteria, the claimant would have mild restriction in activities of daily living if the substance use was stopped. The record indicates that the claimant would be capable of performing most of his activities of daily living if substance use was stopped. He testified that he is able to dress himself and that he changes his clothes on a regular basis. The claimant reported that he takes regular showers but may go a few days without bathing due to depression. He did however explain that he has difficulty being in public and does not shop for groceries. The claimant stated that he is in the process of having his driver's license reinstated. He noted that he could attend more post-

traumatic stress disorder (PTSD) meetings once he obtains his license. According to the record, it appears that the claimant is able to attend medical appointments on a regular basis. As discussed in the decision below, the undersigned finds that the claimant would have only a mild limitation in performing his activities of daily living if substance use was stopped.

In social functioning, the claimant would have moderate difficulties if the substance use was stopped. The record indicates that substance use does affect the claimant's ability to handle stress and thus affects his social interactions. However, the claimant would continue to have moderate difficulties in social functioning if substance use was stopped. The claimant has reported limited socialization with some frequent interaction with his brother and mother (Exhibit 4F/4). The claimant does regularly attend his medical appointments and group therapy meetings where he talks about his experiences with PTSD. He did however testify that he occasionally has problems getting along with neighbors and coworkers which can lead to verbal arguments. The record also indicates that the claimant could have some difficulties relating adequately with others (Exhibit 4F/4). As discussed in the decision below, the undersigned finds that the claimant would have moderate difficulties in his social functioning if substance use was stopped.

With regard to concentration, persistence or pace, the claimant would have moderate difficulties if the substance use was stopped. The record indicates that the claimant has difficulty dealing with stress even during times of sobriety (Exhibit 4F/4). Likewise, his PTSD causes the claimant to have emotional issues at times. However, the evidence shows that substance use does escalate stressful circumstances leading to episodes of decompensation whereas periods of sobriety have improved the claimant's overall mental status and general focus. The claimant testified to occasional difficulty with attention and concentration, yet he has reported that he watches television during the day and is in the process of having his driver's license reinstated. The undersigned notes that both activities require a minimal capacity for attention and concentration. Upon observation, the claimant has been observed to have intact attention and concentration as well as intact recent and remote memory skills (Exhibit 4F/3). As discussed in the decision below, the undersigned finds that the claimant would have moderate difficulties with regard to concentration, persistence, or pace if substance abuse was stopped.

As for episodes of decompensation, the claimant would experience no episodes of decompensation if the substance use was stopped. With substance use, the record indicates that the claimant has had a series of psychiatric admissions. The claimant was admitted to the hospital on several occasions after verbalizing suicidal ideation (Exhibit 11F/2 and 14F/439). The record indicates that substance use contributed to such instances including one in December 2010 when the claimant had relapsed to using cocaine the day after being discharged from his PTSD treatment (Exhibit 14F/439). During times of sobriety, the claimant's records note improved symptoms and no episodes of decompensation. As discussed below, the undersigned finds the claimant would experience no episodes of decompensation if the substance use was stopped.

Because the remaining limitations would not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria would not be satisfied if the claimant stopped the substance use.

See Next Page

The undersigned has also considered whether the "paragraph C" criteria would be satisfied.  In this case, these criteria would not be met if the claimant stopped the substance use.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**13.  If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: The claimant could occasionally climb, balance, stoop, kneel, crouch, or crawl.  He would not be able to lift overhead with his left upper extremity but would have full use of his right upper extremity, which is the dominant extremity.  The claimant would be able to finger objects and control objects level in front of him with his left upper extremity.  He should avoid concentrated exposure to dangerous moving machinery and unprotected heights.  The claimant would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions.  He should have only brief, infrequent, and superficial contact with the public and only occasional interaction with the coworkers and supervisors.  He should work in a job requiring only occasional decision making and with only occasional changes in the work setting.  The claimant could maintain attention and concentration for two-hour segments over an eight-hour period.  This contemplates a fifteen-minute break in the morning, a fifteen-minute break in the afternoon, and a thirty-minute break for lunch.  The claimant could complete a normal workweek without excessive interruptions from psychologically or physically based symptoms.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent

to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

As stated above, the claimant alleges disability due to the aforementioned impairments. If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

As previously discussed, the record indicates that the claimant has a history of alcohol and substance use (Exhibit 9F/55). Evidence indicates that the claimant received an honorable discharge after he was separated from the military due to alcohol rehabilitation failure (Exhibit 3F/87). Following his discharge, the claimant encountered several legal issues related to his drinking including an assault in the third degree and a DUI conviction in 2008 (Exhibit 9F/107). The claimant explained in a 2011 substance abuse assessment with the VA that he initially began taking his pain medication as prescribed, yet quickly began taking thirteen to fifteen dosages per day. He also reported taking up to five Benzodiazepine with Hydrocodone in 2008 explaining that he would use for a period of months through July 2011. He stated that he last used opioids in December 2010. In addition, the claimant reported that he also participated in binge drinking three times per month with a case of beer (Exhibit 9F/100). He stated at that time that he had last used alcohol two years prior, yet the record indicates use as recently as May 2011 (Exhibit 14F/160).

As documented above, the claimant has experienced symptoms of depression and PTSD since his discharge from the military; however, according to the record, these symptoms appear to be exacerbated with substance use. The claimant has participated in several substance abuse treatment programs where he has shown improvement for certain periods of time. However, the evidence indicates that the claimant has eventually returned to use following treatment. The claimant tested positive for opiates and cocaine upon admission for his 28-day PTSD treatment program in November 2009 (Exhibit 3F/33, 57). He was advised that such substances could exacerbate his PTSD symptoms at that time (Exhibit 3F/49). As of May 2011, the claimant reported that he was free of any illicit drugs despite slight cravings (Exhibit 9F/53). He did not express any clinical symptoms of depression, no isolation, and no symptoms of worthlessness (Exhibit 9F/53). The claimant was also said to be comfortable in the dorm and dining hall. However, the next month, the claimant reported cocaine and alcohol use while on leave from his PTSD program (Exhibit 14F/160). Aside from this recent and apparently isolated incident, the claimant reported that his anxiety attacks had not progressed to panic attacks. He likewise expressed no clinical symptoms of depression.

Based on a review of the complete medical record, the undersigned finds that the claimant's substance use would cause him to be off task twenty percent or more of the workday. However, absent such use, the record shows that the claimant would be able to maintain attention and

concentration for two-hour segments over an eight-hour period and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms.

The undersigned also notes that the claimant has provided conflicting information regarding his substance use. The claimant testified that he had a drinking problem when he returned home from Iraq but he no longer drank alcohol. He stated that it had been close to three years since he had last used alcohol. The claimant also acknowledged past drug use such as cocaine, yet he had not used in approximately two years. Despite his testimony of abstention, the record shows that the claimant has admitted to and has tested positive for both alcohol and cocaine as recently as May 2011 (Exhibit 14F/160, 439, 444)).

As for the opinion evidence, significant weight is given to the opinions of Dr. Kathleen Kelley, Dr. Thomas Chou, and Dr. C. Butensky found in Exhibits 5F, 4F, and 7F. As previously noted, their opinions are consistent with the record and they are supported by the evidence. The undersigned notes that absent substance use, the claimant's residual functional capacity is consistent with these opinions.

Less weight has been given to the opinions found in the VA records as they are inconsistent with the findings herein, and opinions regarding disability are reserved for the Commissioner of Social Security (Exhibits 8F, 12F, 14F, and 15F)

In sum, the residual functional capacity is supported by the evidence as a whole. The claimant's subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms if substance abuse was stopped. The undersigned finds that the claimant has not been deprived of the ability to perform work subject to the residual functional capacity assessed by this decision for any 12-month period since his alleged onset date.

**14. If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work (20 CFR 404.1565 and 416.965).**

In response to a hypothetical assuming an individual of the claimant's age, education and work experience, and possessing the same residual functional capacity, the vocational expert testified that such an individual could not perform the claimant's past relevant work. Accordingly, the claimant was unable to perform past relevant work.

**15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

See Next Page

Mark Scott Janeiro (■■■■■■)                                   Page 15 of 16

If the claimant stopped the substance use, the claimant would not have the residual functional capacity to perform the full range of light work. To determine the extent of erosion of the unskilled light occupational base caused by the limitations that would remain, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and the residual functional capacity the claimant would have if he stopped the substance use. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

- gate guard, described by *Dictionary of Occupational Titles (DOT)* code number 372.667-022 as light in terms of exertion and unskilled (SVP 2), numbering approximately 1.1 million jobs in the national economy and 98,000 in the state of New York;

- custodian, described by *DOT* code number 869.687-018 as light in terms of exertion and unskilled (SVP 2), numbering 1.3 million jobs in the national economy and 16,600 in the state of New York; and

- printer or hand collator, described by *DOT* code number 977.687-010 as light in terms of exertion and semi-skilled (SVP 3), numbering 890,000 jobs in the national economy and 31,000 in the state of New York.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the vocational expert's testimony, the undersigned concludes that, if the claimant stopped the substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of 202.21.

**17. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on October 2, 2009, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on October 5, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

See Next Page

Mark Scott Janeiro (⬛⬛⬛⬛⬛⬛)                    Page 16 of 16


/s/ *Scott M. Staller*
Scott M. Staller
Administrative Law Judge

October 13, 2011
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Physical RFC Assessment | | 02/05/2010 | 6 |
| HO 2A | Disability Determination Transmittal | | 02/05/2010 | 1 |
| HO 3A | Disability Determination Transmittal | | 02/05/2010 | 1 |
| HO 4A | Mental RFC Assessment | | | 4 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | Appointment of Representative | | 10/02/2009 | 2 |
| HO 2B | Representative Fee Agreement | | 10/02/2009 | 1 |
| HO 3B | Notice of Disapproved Claim - Concurrent | | 02/05/2010 | 16 |
| HO 4B | Request for Hearing by ALJ | | 02/10/2010 | 1 |
| HO 5B | Request for Hearing Acknowledgement Letter | | 02/24/2010 | 7 |
| HO 6B | Claimant's Change of Address Notification | | 03/22/2010 | 1 |
| HO 7B | Request for Hearing Acknowledgment Letter | | 12/10/2010 | 20 |
| HO 8B | Resume of Vocational Expert | | | 2 |
| HO 9B | Hearing Notice | | 04/01/2011 | 27 |
| HO 10B | Acknowledge Notice of Hearing | | 04/09/2011 | 1 |
| HO 11B | Response to Show Cause Notice | | 06/21/2011 | 2 |
| HO 12B | Hearing Notice | | 07/11/2011 | 24 |
| HO 13B | Acknowledge Notice of Hearing | | 07/17/2011 | 1 |

HA-L39 (03-2007)

Mark Scott Janeiro (⬛⬛⬛⬛)                                    Page 2 of 5

| | | | |
|---|---|---|---|
| HO 14B | Resume of Vocational Expert | | 7 |
| HO 15B | Appointment of Representative | 07/28/2011 | |
| HO 16B | Representative Fee Agreement | 07/28/2011 | |
| HO 17B | Notice Of Hearing Reminder | 08/03/2011 | |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Disability Insurance Benefits | | 10/05/2009 | 2 |
| HO 2D | Application for Supplemental Security Income Benefits | | 10/24/2009 | 3 |
| HO 3D | Detailed Earnings Query | | 02/14/2011 | 5 |
| HO 4D | Certified Earnings Records | | | 2 |
| HO 5D | Other Query | | 03/21/2011 | 2 |
| HO 6D | Detailed Earnings Query | | | 2 |
| HO 7D | Summary Earnings Query | | | 1 |
| HO 8D | Detailed Earnings Query | | | 3 |
| HO 9D | Summary Earnings Query | | | 1 |

## Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Adult | | | to 10/02/2009 | 8 |
| HO 2E | Disability Report - Field Office | | | to 10/24/2009 | 3 |
| HO 3E | Work Activity Report EE | | | to 11/16/2009 | 9 |
| HO 4E | Disability Report - Appeals | | | to 02/13/2010 | 7 |

HA-L39 (03-2007)

Mark Scott Janeiro (███████████)                                    Page 3 of 5

| Component | Description | Source | Dates | Pages |
|---|---|---|---|---|
| HO 5E | Disability Report - Field Office | | | 3 |
| HO 6E | Disability Report - Appeals | | | 5 |
| HO 7E | Representative Correspondence | | 03/21/2011 to 03/21/2011 | 11 |
| HO 8E | Work Background | | to 03/29/2011 | 1 |
| HO 9E | Medications | | to 03/29/2011 | 1 |
| HO 10E | Recent Medical Treatment | | to 03/29/2011 | 1 |
| HO 11E | Recent Medical Treatment | | to 04/26/2011 | 1 |
| HO 12E | Medications | | to 04/26/2011 | 1 |
| HO 13E | Work Background | | to 04/26/2011 | 1 |
| HO 14E | Misc Disability Development and Documentation | Veterans Administration | 01/11/2011 to 01/11/2011 | 6 |
| HO 15E | Medications | | to 07/20/2011 | 1 |
| HO 16E | Recent Medical Treatment | | to 07/20/2011 | 1 |
| HO 17E | Work Background | | to 07/20/2011 | 1 |
| HO 18E | Attorney/Representative -Supplied Evidence | | to 09/19/2011 | |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|

HA-L39 (03-2007)

Mark Scott Janeiro ███████████                              Page 4 of 5

| | | | | |
|---|---|---|---|---|
| HO 1F | Hospital Records | VAMC | 11/20/2007 to 11/12/2009 | 12 |
| HO 2F | Activities of Daily Living | | 12/03/2009 to 12/03/2009 | 13 |
| HO 3F | Hospital Records | VA Medical Center | 10/02/2009 to 12/14/2009 | 115 |
| HO 4F | CE Psychiatry | Thomas Chou, Ph.D. | 01/08/2010 to 01/08/2010 | 5 |
| HO 5F | CE Internal Medicine | Kathleen Kelley, M.D. | 01/08/2010 to 01/08/2010 | 6 |
| HO 6F | Medical Evidence of Record | Erie County Medical Center | 05/11/2009 to 01/16/2010 | 59 |
| HO 7F | Psychiatric Review Technique | | to 02/04/2010 | 14 |
| HO 8F | Medical Evidence of Record | Veterans Hospital | 11/23/2009 to 02/08/2010 | 21 |
| HO 9F | Office Treatment Records | VA Medical Center-Batavia | 01/11/2011 to 04/25/2011 | 282 |
| HO 10F | Laboratory Test Report | Buffalo MRI and CT | 03/03/2008 to 03/03/2008 | 3 |
| HO 11F | Hospital Records | Erie County Medical Center | 01/16/2010 to 12/17/2010 | 20 |
| HO 12F | Office Treatment Records | VA Bath | 11/20/2007 to 05/11/2011 | 298 |
| HO 13F | Emergency Department Records | Erie County Medical Center | 06/26/2011 to 06/26/2011 | 14 |
| HO 14F | Office Treatment Records | VA Medical Center Buffalo | 03/17/2009 to 05/27/2011 | 801 |

HA-L39 (03-2007)

Mark Scott Janeiro ███████████                          Page 5 of 5

| | | | |
|---|---|---|---|
| HO 15F | Emergency Department Records | VA Medical Center-Hudson Valley | 07/15/2011 to 07/16/2011 |

# Exhibit B

SOCIAL SECURITY ADMINISTRATION

Refer to: TLC

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: February 21, 2013

## NOTICE OF APPEALS COUNCIL ACTION

Mr. Mark Scott Janeiro
8 St James St
Depew, NY 14043

This is about your request for review of the Administrative Law Judge's decision dated
October 13, 2011.

### We Have Denied Your Request for Review

We found no reason under our rules to review the Administrative Law Judge's decision.
Therefore, we have denied your request for review.

This means that the Administrative Law Judge's decision is the final decision of the
Commissioner of Social Security in your case.

### Rules We Applied

We applied the laws, regulations and rulings in effect as of the date we took this action.

Under our rules, we will review your case for any of the following reasons:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- We receive new and material evidence and the decision is contrary to the weight of all the
  evidence now in the record.

### What We Considered

In looking at your case, we considered the reasons you disagree with the decision in the
material listed on the enclosed Order of Appeals Council.

See Next Page

Mark Scott Janeiro  )                                        Page 2 of 3

We found that this information does not provide a basis for changing the Administrative Law
Judge's decision.

**If You Disagree With Our Action**

If you disagree with our action, you may ask for court review of the Administrative Law
Judge's decision by filing a civil action.

If you do not ask for court review, the Administrative Law Judge's decision will be a final
decision that can be changed only under special rules.

**How to File a Civil Action**

You may file a civil action (ask for court review) by filing a complaint in the United States
District Court for the judicial district in which you live. The complaint should name the
Commissioner of Social Security as the defendant and should include the Social Security
number(s) shown at the top of this letter.

You or your representative must deliver copies of your complaint and of the summons issued
by the court to the U.S. Attorney for the judicial district where you file your complaint, as
provided in rule 4(i) of the Federal Rules of Civil Procedure.

You or your representative must also send copies of the complaint and summons, by certified
or registered mail, to the Social Security Administration's Office of the General Counsel that
is responsible for the processing and handling of litigation in the particular judicial district in
which the complaint is filed. The names, addresses, and jurisdictional responsibilities of these
offices are published in the Federal Register (70 FR 73320, December 9, 2005), and are
available on-line at the Social Security Administration's Internet site,
http://policy.ssa.gov/poms.nsf/links/0203106020.

You or your representative must also send copies of the complaint and summons, by certified
or registered mail, to the Attorney General of the United States, Washington, DC 20530.

**Time To File a Civil Action**

- You have 60 days to file a civil action (ask for court review).

- The 60 days start the day after you receive this letter. We assume you received this letter
  5 days after the date on it unless you show us that you did not receive it within the 5-day
  period.

- If you cannot file for court review within 60 days, you may ask the Appeals Council to
  extend your time to file. You must have a good reason for waiting more than 60 days to
  ask for court review. You must make the request in writing and give your reason(s) in
  the request.



See Next Page

Mark Scott Janeiro (▓▓▓▓▓▓▓▓)                                    Page 3 of 3

You must mail your request for more time to the Appeals Council at the address shown at the top of this notice. Please put the Social Security number(s) also shown at the top of this notice on your request. We will send you a letter telling you whether your request for more time has been granted.

## About The Law

The right to court review for claims under Title II (Social Security) is provided for in Section 205(g) of the Social Security Act. This section is also Section 405(g) of Title 42 of the United States Code.

The right to court review for claims under Title XVI (Supplemental Security Income) is provided for in Section 1631(c)(3) of the Social Security Act. This section is also Section 1383(c) of Title 42 of the United States Code.

The rules on filing civil actions are Rules 4(c) and (i) in the Federal Rules of Civil Procedure.

## If You Have Any Questions

If you have any questions, you may call, write, or visit any Social Security office. If you do call or visit an office, please have this notice with you. The telephone number of the local office that serves your area is (800)647-9195. Its address is:

> Social Security
> 1900 Ridge Rd
> Suite 120
> West Seneca, NY 14224-3332

/s/ *Klara M. Huesers*
Klara M. Huesers
Appeals Officer

Enclosure: Order of Appeals Council

cc: Melissa Pezzino
    6000 N Bailey Avenue
    Suite 1A
    Amherst, NY 14226

Social Security Administration
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

### ORDER OF APPEALS COUNCIL

**IN THE CASE OF**                                      **CLAIM FOR**

                                                                Period of Disability
                                                                Disability Insurance Benefits
Mark Scott Janeiro                                              Supplemental Security Income
(Claimant)

(Wage Earner)                                        (Social Security Number)

The Appeals Council has received additional evidence which it is making part of the record.
That evidence consists of the following exhibits:


Exhibit 19E          Representative contentions dated May 23, 2012 (3
                     pages)



Date: February 21, 2013